Bakas, J.
The plaintiff, Lyudmila Knobel-Aronova, was one of three plaintiffs[1] who sought to recover damages in an action of tort for bodily injuries sustained by each of them incident to an assault and battery inflicted upon them by the defendant, Vladimir Knobel. At all times relevant to the instant case, the plaintiff, Lyudmila Knobel-Aronova and the defendant, Vladimir Knobel, were husband and wife. The single issue presented by the Report pertains to the trial judge’s denial of the defendant’s motion to dismiss so much of the complaint relative to his wife’s claim against him (and the consequent finding for her and award of damages in the amount of $3,000.00).
The basis for the defendant’s motion to dismiss is grounded on the fact that the plaintiff, Lyudmila Knobel-Aronova, is his wife; that, G.L. c. 209 §6 . . . does not authorize suits between husband and wife. ..; that, there exists a common law prohibition against such actions between spouses; and, an assertion that the court lacked jurisdiction over this part of the action.
We affirm the trial judge’s denial of the defendant’s motion to dismiss and we hereby order the report dismissed.
*76 In Lewis v. Lewis, 370 Mass. 619 (1976) the Supreme Judicial Court addressed the common law doctrine or rule of interspousal immunity G. L. c. 209, sec. 6.[2] In abrogating the rule of interspousal immunity in cases arising out of motor vehicle accidents, the court rejected the argument that G. L. c. 209, § 6, incorporated the common law rule of interspousal immunity. In substance, the court reasoned that the statute does not directly forbid tort suits between husband and wife, and, that, the “shall not authorize” language of the statute is a reference to and not the incorporation of the common law rule of interspousal immunity. The court went on to “conclude that the statute has left the rule in its common law status susceptible to reexamination and alteration by the court.” Having concluded that the statute was no obstacle and that the court could abrogate the rule, it went on to say, “We have examined the reasons offered in support of the common law immunity doctrine and, whatever their vitality in the social context of generations past, we find them inadequate today to support a general rule of interspousal tort immunity.” It is also cogent to note that the court at page 624 cited with approval several jurisdictions that rejected the rule of interspousal immunity, including no less than two jurisdictions relative to intentional torts... Self v. Self, 68 Cal. 2nd 683, 689-691 (1962) and Flores v. Flores, 85 N.M. 601, 603 (Ct. App. 1973).
Pevoski v. Pevoski, 371 Mass. 358 (1976) re-enforced the Lewis decision by rejecting interspousal tort immunity again and applying the Lewis holding retroactively to causes of action arising prior to the date of the Lewis decision.
Brown v. Brown, 381 Mass. 231 (1980) extended the holding of the Lewis court to claims “not arising out of motor vehicle accidents”, i.e., so-called negligent torts and beyond the narrow limits of negligent motor vehicle accident cases. The decision further criticized the common law rule of interspousal immunity and took note of the continued trend toward abrogation of the rule by citing additional jurisdictions since the Lewis decision in 1976. Further, the court quoted with approval from Merenoff v. Merenoff, 76 N.J. 535 (1978), the proposition that, “subject to these excepted areas which are best left to be defined and developed on a case by case basis, there presently exists no cogent or logical reason why the doctrine of interspousal tort immunity should be continued and it is hereby abrogated as a bar to a civil suit between married persons for damages for personal injuries.”
In Comm. v. Chretien, 383 Mass. 123 (1981), the conviction of a defendant-husband who raped his wife was affirmed by “construing the rape statutes in a fashion contrary to the common law” and thus abrogated the principle of spousal exclusion for rape. However, the court went on to say, “We think, however, that while a statute in derogation of the common law is to be strictly construed, the construction adopted should advance rather than defeat the purpose of the statute.” In support of its reasoning the court made reference to G. L. c. 209A (enacted by St. 1978, c. 447), which “provides a wide range of remedies for abuse and expressly defines'abuse’ ,to cover involuntary sexual relations engaged in by spouses where one spouse is made to submit by force, threat of force or duress. G. L. c. 209A, §3, provides a wide range of civil situations for the proscribed conduct and expressly states that proceedings under c. 209A shall not preclude any other available civil or criminal remedies.”
*77 We are not unmindful that the tortious conduct in the instant case was an intentional tort as distinguished from a motor vehicle tort or negligent tort as in the cases of Lewis, Pevoski and Brown; however, even th e Lewis court over ten years ago cited with approval no less than two jurisdictions that abrogated the rule of interspousal immunity in cases involving intentional torts. Given the trend of our cases, both civil and criminal, it would be anomalous indeed to foreclose the plaintiff-wife’s right to seek damages against her defendant-husband for his tortious intentional misconduct but to allow other plaintiff spouses the right to seek damages in instances of tortious negligent misconduct or so-called negligent torts. We think it to be unlikely that our appellate courts would adopt such a posture in the context of today’s world and therefore refuse to lend any legal substance to the distinction hereinabove postulated. In this connection the Lewis court’s assault upon the rule, indicated that when “the rule itself is not consonant with the needs of contemporary society, a court not only has the authority but also the duty to reexamine its precedents rather than to apply by rote an antiquated formula.” And, further, the court adopted the following language at page 628:
One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. Dean Pound posed the problem admirably in his Interpretations of Legal History (1922) when he stated, ‘Law must be stable, and yet it cannot stand still.’
Finally, we cannot help but respond to the argument most frequently advanced in favor of the rule of interspousal immunity, namely, “that tort actions between husband and wife would tend to disrupt the peace and harmony of the family.” In the instant case, it was not the legal existence or the right of a tort action that disrupted or tended to disrupt the peace and harmony of the family, but, rather, the intentional tortious misconduct visited upon the plaintiff-wife by the defendant-husband, in an environment that was neither peaceful nor harmonious. If anything, the right of action would be more of a deterrent, than a cause of interspousal mischief.
For the reasons stated, we find no error by the trial judge and order the report dismissed. The judgment for the plaintiff, Lyudmila Knobel-Aron ova is affirmed.

 The findings for the other two plaintiffs, Abram Aronova and Berta Aronova (father and mother of the plaintiff, Lyudmila Knobel-Aronova) and their respective awards in the amount of $3,000.00 each is not contested by the defendant.

 G.L.c. 209, § 6. A married woman may sue and be sued in the same manner as if she were sole; but this section shall pot authorize suits between husband and wife except in connection with contracts entered into pursuant to the authority contained in section two.