FEVRONIA STAMBOULIS & another[1] *vs.* MARIANNA
STAMBOULIS.

Worcester. October 6, 1987. — March 7, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Negligence,* Parent. *Parent and Child,* Immunity in tort actions. *Minor,*
Claim against parent. *Actionable Tort.*

The principle of parent-child immunity does not provide an absolute bar to
an action by a minor child against a parent whose negligence caused
injury to the child. [763-765] HENNESSEY, C.J., concurring; NOLAN,
J., with whom LYNCH, J., joins, dissenting; O'CONNOR, J., with whom
LYNCH, J., also joins, dissenting.

CIVIL ACTION commenced in the Superior Court Department
on May 20, 1985.

The case was heard by *Barbara J. Rouse,* J., on a motion
for summary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*Roger J. Brunelle* for the plaintiff.

*Kenneth F. Rosenberg* for the defendant.

WILKINS, J. On April 12, 1984, the defendant, who operated
the College Square Pizza on Southbridge Street in Worcester,
took her three year old daughter with her to the pizza facility.
The defendant was making pizzas, and Fevronia was putting
dough in pizza pans. When the defendant went to answer the
telephone, Fevronia undertook to put dough through an electric
dough rolling machine on a kitchen counter. One of her hands
was caught in the machine and injured.

In this action, Fevronia by her father seeks to recover against
her mother for negligently causing Fevronia's injury. Her father

---

[1] Anastasios Stamboulis, her father.

seeks on his own behalf to recover for medical expenses and also for negligent infliction of emotional distress. A Superior Court judge allowed the mother's motion for summary judgment on Fevronia's claim against her mother and on the father's claim for medical expenses. Judgment was entered under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1965), as to the counts on which summary judgment was granted in favor of the mother, and Fevronia and her father appeal.[2] We allowed the plaintiffs' application for direct appellate review.

The judge's ruling followed our decisions concerning parent child immunity. See *Luster* v. *Luster,* 299 Mass. 480 (1938); *Oliveria* v. *Oliveria,* 305 Mass. 297 (1940), which recognized the principle and *Sorensen* v. *Sorensen,* 369 Mass. 350 (1973), which abrogated the rule in a limited respect. The judge's decision concerned only the question of the immunity of the defendant mother from liability for negligently causing injury to her minor child. The judge did not consider the circumstances of the accident and whether, absent parental immunity, there was a breach of duty.[3]

In the *Sorensen* case, the court abrogated the principle of parent-child immunity for motor vehicle torts only.[4] We recognized that, just because the wrongdoer was a parent of the injured minor, the defendant was not insulated from liability. Our rejection of parental status as a conclusive factor in decid-

---

[2] The third count, concerning the father's emotional distress, remains open.

[3] Justice O'Connor's dissent attributes to the court an unexpressed intention to allow a child to recover for negligent parental supervision. We take no view on this issue because it was not presented to the court below. Moreover, the facts set forth on the summary judgment motion do not permit an appropriate analysis of the issue.

[4] The opinion indicated that immunity was to be abrogated in motor vehicle tort cases only if there was insurance coverage involved. *Id.* at 352-353. This distinction is not logical, and it may not survive. See *New Hampshire Ins. Co.* v. *Fahey,* 385 Mass. 137, 138 (1982); *Pevoski* v. *Pevoski,* 371 Mass. 358, 362-363 (1976) (Quirico, J., concurring); *Lewis* v. *Lewis,* 370 Mass. 619, 630 n.4 (1976). If this court were to regard insurance as a reason for finding liability in the case before us, the requirement is met because the defendant mother has a business owner's policy with a limit of $300,000 for completed operations and products hazards.

ing a liability question is consistent with a pattern of tort decisions from this court in the past twenty years. We have rejected the status of a party to the tort as a controlling element in determining liability for negligence. See *Colby* v. *Carney Hosp.,* 356 Mass. 527, 528 (1969) (defendant's status as a charity not to be a bar to liability in future cases); *Mounsey* v. *Ellard,* 363 Mass. 693, 707 (1973) (landowner's duty of care not affected by status of person lawfully on the premises); *Lewis* v. *Lewis,* 370 Mass. 619, 630 (1976) (interspousal immunity abolished as to motor vehicle accidents); *Whitney* v. *Worcester,* 373 Mass. 208, 210 (1977) (common law governmental immunity to be abrogated); *Brown* v. *Brown,* 381 Mass. 231, 231 (1980) (interspousal immunity abolished as to non-motor vehicle torts). Contra *Schofield* v. *Merrill,* 386 Mass. 244 (1982) (adult trespasser, not known to be in peril, absolutely barred from asserting negligence claim against landowner, but see *id.* at 254-259 [Liacos, J., dissenting, with whom Wilkins and Abrams, JJ., joined]).

There is nothing special about negligently caused motor vehicle injuries that sets them apart from all other negligently caused injuries. A distinction based on motor vehicle versus non-motor vehicle accidents in deciding the limits of parental immunity has no rational justification. Indeed, no logical line based on immunity can be drawn, and none should be. Restatement (Second) of Torts § 895G (1979).[5] See *Brown* v. *Brown,*

---

[5] "A parent or child is not immune from tort liability to the other solely by reason of that relationship." Restatement (Second) of Torts § 895G (1) (1979). Section 895G approves the trend toward abrogation of the doctrine of parent-child immunity "and takes the position that under the better law the immunity between parent and child is entirely abrogated." *Id.* at comment j.

A number of courts have abolished the doctrine, which has no old common law origin. See *Gibson* v. *Gibson,* 3 Cal. 3d 914, 921-922 (1971) (adopting a reasonable parent standard); *Petersen* v. *Honolulu,* 51 Hawaii 484, 486 (1969) (parent-child negligence suits will be allowed regardless of the presence or absence of insurance); *Anderson* v. *Stream,* 295 N.W.2d 595, 601 (Minn. 1980) (adopting a reasonable parent standard); *Briere* v. *Briere,* 107 N.H. 432, 436 (1966); *Kirchner* v. *Crystal,* 15 Ohio St. 3d 326, 330 (1984); *Falco* v. *Pados,* 444 Pa. 372, 376, 378-379 (1971) (citing opinions in twelve States which had abolished the doctrine); *Elam* v. *Elam,* 275 S.C. 132, 134, 137 (1980) (abolishing the parental immunity common law doc-

381 Mass. 231, 232 (1980), where we said that "the reasons for abrogation [of the immunity for negligence] are not limited to [motor vehicle] cases." The point is that status should not be determinative in either situation.

Once immunity is eliminated, the focus should be on the duty of care that should be applied in deciding a minor child's negligence claim against a parent. The fact of parenthood is relevant to the standard of care which a court should apply. Courts which have abrogated (or never have adopted) parental immunity have taken different views of the appropriate standard of care in various situations.[6] The issue is not before us. We do not decide it and could not on the record before us.

All we decide here is that no absolute curtain of immunity protects a parent who negligently causes injury to his or her minor child.

*Judgment reversed.*

---

trine in South Carolina, and also declaring a State statute abolishing this doctrine only in motor vehicle cases unconstitutional on equal protection grounds). Other courts have declined to adopt the doctrine of parental immunity, not found at common law, as a rule of law. See *Rupert* v. *Stienne,* 90 Nev. 397, 404-405 (1974); *Wood* v. *Wood,* 135 Vt. 119, 121-122 (1977).

Scholarly comment since the adoption of § 895G appears to be strongly in favor of the rejection of parent-child immunity. See 2 F. Harper, F. James, & O. Gray, Torts § 8.11, at 574-581 (2d ed. 1986); W.L. Prosser & W.P. Keeton, Torts § 122, at 904-907 (5th ed. 1984); Hollister, Parent-Child Immunity: A Doctrine in Search of Justification, 50 Fordham L. Rev. 489 (1982); Note, *Ard* v. *Ard*: Limiting the Parent-Child Immunity Doctrine, 44 U. Pitt. L. Rev. 977 (1983); Note, The Unsupervised Child: Parental Negligence or Necessity?, 15 Val. U.L. Rev. 167 (1980).

[6] Some courts have adopted the position of the Restatement (Second) of Torts § 895G (1979), and have applied a reasonable parent standard. See *Gibson* v. *Gibson,* 3 Cal. 3d 914, 921 (1971); *Anderson* v. *Stream,* 295 N.W.2d 595, 600-601 (Minn. 1980). Others have declined to impose liability for negligent supervision. See, e.g., *Foldi* v. *Jeffries,* 93 N.J. 533, 547 (1983). Some courts have allowed recovery when the tort was committed in the course of a business activity of the parent. See, e.g., *Signs* v. *Signs,* 156 Ohio St. 566, 577 (1952); *Felderhoff* v. *Felderhoff,* 473 S.W.2d 928, 930 (Tex. 1971). New York has taken the position that a parent may be held liable for breach of a duty "ordinarily owed, apart from the family relation," but not for "negligent supervision" resulting in injury to the child. *Holodook* v. *Spencer,* 36 N.Y.2d 35, 50, 51 (1974).

HENNESSEY, C.J. (concurring). I agree with the result reached by Justices Wilkins, Liacos, and Abrams. I also agree with their reasoning in all but one respect, as follows. The opinion lists and briefly describes several cases in which we have rejected the status of a party to the tort (e.g., a spouse, a charity, a government entity) as a controlling element in determining liability for negligence. Also listed is *Schofield v. Merrill,* 386 Mass. 244 (1982), in which a majority of this court concluded that an adult trespasser, not known to be in peril, was barred from recovering in a negligence claim against the landowner. The implication is that the result in *Schofield* is inconsistent (it is cited as "contra") with the "status" cases. Not so. I suppose that in a dictionary sense we are indicating a status when we speak of a trespasser. More significantly, we are referring to *conduct.* "Trespasser" is a label for a person who has unlawfully entered the land of another. I joined a majority of this court in *Schofield* in determining that such a wrongdoer, whether burglar or mere interloper, can prevail only upon a showing of wilful, wanton, or reckless conduct of the defendant landowner. I suggest that the *Schofield* result is sound policy, and also is consistent with the reasoning that the status of a party should not be a controlling element in determining liability for negligence.

NOLAN, J. (dissenting, with whom Lynch, J., joins). I dissent. In the case of *Sorensen* v. *Sorensen,* 369 Mass. 350 (1975), we allowed an exemption to the parent-child immunity doctrine in automobile tort actions to the extent that the damages were paid from motor vehicle liability insurance. Although subsequent decisions have questioned the validity of the insurance coverage requirement of *Sorensen,* see *Lewis v. Lewis,* 370 Mass. 619, 630 n.4 (1976); *Pevoski* v. *Pevoski,* 371 Mass. 358, 363 (1976) (Quirico, J., concurring); *New Hampshire Ins. Co.* v. *Fahey,* 385 Mass. 137, 138 (1982), never has the court expanded the parent-child immunity exception beyond motor vehicle torts.

Our reticent approach to dismantling the immunity between child and parent is best explained in the concluding passages of

the *Sorensen* opinion. "We limit our holding to the circumstances of the case before us: an automobile tort action brought by an unemancipated minor child against a parent. Allowance of such an action neither undermines 'parental authority and discipline' . . . nor threatens substitution of judicial discretion for parental discretion in the care and rearing of minor children. Neither parental authority and discipline nor parental discretion in child care is called into question by an automobile accident case. . . . We are mindful that there may be parental exercises of discretion and authority which should be immune from scrutiny in a court of law. However, we are not here confronted with such cases and we need not speculate as to the scope of our holding. That scope will be determined by following the logic and policy of the present decision." *Sorensen, supra* at 365-366 (footnote and citations omitted).

To allow the child in the instant case to maintain an action against her mother for failing properly to supervise her activities at the pizza shop is to ignore each of the reservations expressed by the *Sorensen* court. Unlike a motor vehicle tort action, allowance of the present action tends to undermine parental authority and discipline by substituting for parents' discretion in the care and rearing of minor children that of the court. Nor should we create a new immunity exception that would allow a child to maintain an action against a parent where the alleged negligent supervision occurred at the parent's place of business, a limited exception that even the plaintiffs describe as "not logically defensible." [1]

The decision today to strike the parent-child immunity doctrine in this case alleging negligent parental supervision flies in the face of a majority of the State courts. See, e.g., *Thomas* v. *Inmon,* 268 Ark. 221, 223 (1980) (immunity bars action for negligence against persons standing in loco parentis); *Horton* v.

---

[1] Furthermore, a review of the minority of jurisdictions that do provide a business exception to the parent-child immunity doctrine discloses that the underlying theory of the exception is premised on the existence of a master-servant relationship between child and parent, and not merely on the location of the alleged negligent act. See, e.g., *Felderhoff* v. *Felderhoff,* 473 S.W.2d 928, 929, 933 (Tex. 1971).

*Reaves,* 186 Colo. 149, 156 (1974) (simple negligence claim by infant against mother barred by parental immunity); *Horton v. Unigard Ins., Co.,* 355 So. 2d 154, 156 (Fla. Dist. Ct. App. 1978) (tort action may not be maintained between father and son because of policy to encourage family unity and maintain family discipline); *Coleman* v. *Coleman,* 157 Ga. App. 533, 533-534 (1981) (unemancipated child cannot sue parent for injury arising from negligent act); *Pedigo* v. *Rowley,* 101 Idaho 201, 205 (1980) (parental immunity bars action for alleged negligent supervision); *Vaughan* v. *Vaughan,* 161 Ind. App. 497, 500 (1974) (action based on failure to supervise barred by parental immunity); *Rigdon* v. *Rigdon,* 465 S.W.2d 921, 923 (Ky. Ct. App. 1971) (declaring intention to retain parent-child immunity in cases involving reasonable exercise of parental discretion and authority); *Plumley* v. *Klein,* 388 Mich. 1, 8 (1972) (preserving parental immunity for negligent acts involving parental discretion and authority); *Pullen* v. *Novak,* 169 Neb. 211, 224 (1959) (unemancipated minor cannot maintain action for ordinary negligence against parent); *Zikely* v. *Zikely,* 98 A.D.2d 815, 816 (N.Y. Sup. Ct. 1983) (no cause of action exists for parent's negligent supervision of infant); *Goller* v. *White,* 20 Wis. 2d 402, 413 (1963) (immunity abrogated except where negligent act involves exercise of parental authority or discretion respecting provision of necessities and care). Contrast Restatement (Second) of Torts § 895G (1979) (endorsing minority view of complete abrogation of parent-child immunity). We should decline to expand the *Sorensen* exception and to encroach further upon the parent-child immunity doctrine. We should follow the logic and policy of that decision, and remain mindful of the parental exercises of discretion and authority that should continue to be immune from scrutiny in our courts. The intimacy of the parent-child relationship is too precious to be exposed to civil process in these circumstances.

O'CONNOR, J. (dissenting, with whom Lynch, J., joins). I fully agree with Justice Nolan's dissenting opinion. I add further comments, however, because I perceive in the court's

opinion a strong suggestion that not only is the doctrine of parent-child immunity no longer the law of this Commonwealth but also, henceforth, the court will recognize a parent's legal duty to exercise reasonable care in the supervision of his or her child, violation of which will be the basis of liability. If that is not the court's message, it is difficult to understand why, in this negligent supervision case, the court reverses the summary judgment for the parent. Indeed, it would make little sense for the court to abolish the immunity doctrine in cases alleging negligent parental supervision without also recognizing a violation of duty with regard to supervision as a basis of liability. Such recognition is highly undesirable for the reasons rooted in the autonomy of the family expressed by Justice Nolan in support of the proposition that parent-child immunity should be retained.

The court states, *ante* at 764, that "[w]e have rejected the status of a party to the tort as a controlling element in determining liability for negligence," and cites five cases as authority for that statement. In four of the cited cases, the court rejected the particular status of the parties as entitling the defendants to immunity. However, immunity aside, this court has never rejected the principle that the status of the parties may control with respect to whether a party owes another party a duty to exercise reasonable care for his well-being. In the fifth case cited by the court, *Mounsey* v. *Ellard,* 363 Mass. 693 (1973), a case not dealing with immunity but rather with duty, we did not reject the status of the parties as a controlling factor in determining whether a landowner owes a duty of reasonable care to persons on his land. We simply held that a landowner does owe such a duty to one lawfully on the premises irrespective of whether the party enjoying that status is an invitee or only a licensee. We stated in *Mounsey, supra* at 707 n.7, that "there is significant difference in the legal status of one who trespasses on another's land as opposed to one who is on the land under some color of right — such as licensee or invitee." Our recognition of that significant difference in status was the basis of our subsequent holding in *Schofield* v. *Merrill,* 386 Mass. 244 (1982), that a landowner does not owe to an adult

trespasser, not in a known position of peril, a duty to exercise ordinary care for his safety. The status of the parties in *Schofield* barred the plaintiff's recovery, and the status of the parties here should bar recovery as well, both because parent-child immunity in the circumstances of this case should be retained, and because, in any event, parental liability for negligent supervision of the parent's child should not be recognized.